**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 11-cv-00971-CMA-CBS

GERALD D. HOSIER, Individually and as Trustee of
   The Gerald D. Hosier U/A/D 10/04/99,
BRUSH CREEK CAPITAL LLC, and
JERRY MURDOCK, JR.,

      Petitioners/Arbitration Claimants,

v.

CITIGROUP GLOBAL MARKETS, INC.,

      Respondent/Arbitration Respondent.

_____

**ORDER CONFIRMING ARBITRATION AWARD AND DENYING MOTION TO
VACATE ARBITRATION AWARD**

_____

      This matter is before the Court on Petitioners Gerald D. Hosier ("Hosier"), Brush

Creek Capital LLC ("Brush Creek"), and Jerry Murdock, Jr.'s ("Murdock") (collectively,

"Petitioners") Petition to Confirm Arbitration Award and for Entry of Judgment (Doc. # 1),

and Respondent Citigroup Global Markets, Inc.'s ("CGMI") Motion to Vacate Arbitration

Award.  (Doc. # 16.)  For the reasons set forth below, the Court denies CGMI's Motion

to Vacate Arbitration Award and confirms the Arbitration Award.

## I. **BACKGROUND**

      On June 2, 2009, Petitioners filed a Statement of Claim ("SOC") with the

Financial Industry Regulatory Authority ("FINRA") Dispute Resolution Panel seeking to

recover losses from investments that they made with CGMI.  (Doc. # 14-13.)  In the

SOC, Petitioners asserted the following causes of action: (1) breach of fiduciary duty;

(2) breach of written contract; (3) constructive fraud; (4) violation of FINRA rules; (5) unsuitability; (6) failure to supervise; and (7) respondeat superior.  (*Id.*, ¶¶ 64-82.)

These causes of actions relate to the sale of investment products that were created or sponsored by CGMI and sold to Petitioners through CGMI's investment advisors.  (Doc. # 14-13, ¶ 10.)  Petitioners alleged that CGMI marketed the products to high net worth individuals "as a higher yielding alternative to municipal bond portfolios with little, if any, additional risk."  (Doc. # 74-1 at 15.)  In actuality, Petitioners asserted that CGMI misrepresented the risks involved with these investment products, and induced Petitioners to invest in such products "in lieu of making or continuing direct investments in highly rated and insured municipal bonds or like securities."  (Doc. # 14-13, ¶ 20.)  Petitioners requested $48,190,417 in compensatory for their investment losses.  Additionally, Petitioners requested punitive damages and attorneys' fees and costs.  (*Id.* at 36.)

CGMI's defense relied largely on the fact that Petitioners had signed Subscription Agreements, "in which they specifically represented and warranted that they had read and understood the written risk disclosures—including the warning that they could lose all of the principal they were investing."  (Doc. # 16 at 2.)  CGMI argued at the arbitration hearing (and again in this motion) that Petitioners' claims were barred as a matter of law because of these risk disclosure statements.

A hearing before a FINRA arbitration panel (the "Panel") commenced on March 14, 2011.  (Doc. # 1 at 3.)  All parties signed Submission Agreements, which bound the parties to "perform any award(s) rendered pursuant to" the Agreements and provided

that any court of competent jurisdiction may enter judgment on an arbitral award. (Doc. # 2 at 3-10.)  Over the course of the nine day hearing before the Panel, the parties, through their legal counsel, made opening statements, presented witness testimony and documentary evidence, and gave closing arguments.  (Doc. # 1, ¶ 9.)

On April 11, 2011, the Panel issued an Arbitration Award (the "Award"), which constituted a full and final resolution of all issues submitted for determination.  The Panel awarded Hosier compensatory damages in the amount of $21,683,679, Brush Creek compensatory damages in the amount of $8,472,212, and Murdock compensatory damages in the amount of $3,903,057.  (Doc. # 2 at 13.)  The Panel also awarded Petitioners punitive damages in the amount of $17,000,000 and attorneys' fees in the amount of $3,000,000.[1] (*Id.*)

On April 12, 2011, Petitioners petitioned this Court to confirm the Award, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9.  (Doc. # 1.)  Petitioners asserted that no grounds exist to vacate the Award under § 10 of the FAA.  (*Id.*, ¶ 12.) On May 11, 2011, CGMI responded, requesting that the Petition be denied.  (Doc. # 17, ¶ 5.)  In conjunction with its response, CGMI also filed a Motion to Vacate Arbitration Award.  (Doc. # 16.)  Petitioners responded on June 27, 2011, CGMI replied on July 28, 2011, and Petitioners filed a Sur-Reply on August 8, 2011, which was accepted as filed on October 18, 2011.  (Doc. ## 54, 67, 68-1, 95.)

---

[1] The Panel also awarded Petitioners $33,500 in expert witness fees, $13,168.29 in court reporter costs, and $600 as reimbursement for the non-refundable portion of the initial filing fee previously paid by Petitioners to FINRA Dispute Resolution.  (*Id.*)  CGMI does not contest these awards, except insofar as it contends that the entire Award should be vacated.

## II. <u>LEGAL STANDARD</u>

Confirmation of an arbitration award under § 9 of the FAA is intended to be summary; the Court "**must** grant . . . an order [confirming the award] unless the award is vacated, modified, or corrected."  9 U.S.C. § 9 (emphasis added).  A district court "does not sit to hear claims of factual or legal error by an arbitrator as if it were an appellate court reviewing a lower court's decision."  *Morrill v. G.A. Mktg., Inc.*, No. 04-cv-01744, 2006 WL 2038419, at *1 (D. Colo. July 18, 2006) (unpublished) (citing *United Paperworkers Intern. Union v. Misco, Inc.*, 484 U.S. 29, 37-38 (1987)).  Thus, arbitral awards must be confirmed even in the face of errors in an arbitration panel's factual findings, or its interpretation and application of the law.  *See Denver & Rio Grande W. R.R. v. Union Pac. R.R.*, 119 F.3d 847, 849 (10th Cir. 1997).

Maximum deference is owed to the arbitrators because the parties have contracted to use binding arbitration rather than litigation as a means to resolve their disputes.  *See Commercial Refrigeration, Inc. v. Layton Constr. Co., Inc.*, 319 F. Supp. 2d 1267 (D. Utah 2004); *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991) ("By agreeing to arbitrate, a party trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.").

To give full effect to the parties' contractual agreement, arbitration awards may be vacated by a court only on extremely limited grounds.  Indeed, the Tenth Circuit has characterized the standard of review as "among the narrowest known to the law."  *U.S. Energy Corp. v. Nukem, Inc.*, 400 F.3d 822, 830 (10th Cir. 2005); *see also Hollern v. Wachovia Sec., Inc.*, 458 F.3d 1169, 1172 (10th Cir. 2006) (citation omitted) ("Once

an arbitration award is entered, the finality of arbitration weighs heavily in its favor and cannot be upset except under exceptional circumstances.").

Section 10 of the FAA permits a district court to vacate an arbitration award under only four circumstances:

> (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; [and] (4) where the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10.[2]

In addition to these statutory reasons, the Tenth Circuit has also recognized "a handful of judicially created reasons" for vacating or modifying an award, including that the arbitrators acted in "manifest disregard of the law."  *See Sheldon v. Vermonty*, 269 F.3d 1202,1206 (10th Cir. 2001).  It is unclear whether the "manifest disregard" standard remains a valid reason for vacating an arbitration award in light of the Supreme Court's decision in *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008).  In *Hall Street*, the Supreme Court held that the FAA sets forth the exclusive grounds for judicial review of an arbitration award.  *See* 552 U.S. at 586 ("the text [of the FAA] compels a reading of the §§ 10 and 11 categories as exclusive.").  At first blush, *Hall Street* would seem to dispel of manifest disregard as grounds for vacatur.  Both the Supreme Court and the Tenth Circuit, however, have expressly declined invitations to

---

[2] Section 11 of the FAA allows a court to modify an award "[w]here the arbitrators have awarded upon a matter not submitted to them . . . ."  9 U.S.C. § 11.

say whether the manifest disregard standard survives *Hall Street*.[3]  *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S.Ct. 1758, 1768 n.3 (2010); *Abbott v. Law Office of Patrick J. Mulligan*, No. 10-4113, 2011 WL 4375087, at *6 (10th Cir. Sept. 21, 2011) (unpublished).  In the "absence of firm guidance" from the Supreme Court or the Tenth Circuit, and because it is ultimately non-consequential to the disposition of this case, this Court also declines to decide "whether the manifest disregard standard should be entirely jettisoned."  *See Abbott*, 2011 WL 4375087, at *6.  Thus, for purposes of this Order only, the Court will assume that an arbitration award may be vacated when it is shown that the arbitrators acted in manifest disregard to the law.

　　　"Manifest disregard of the law clearly means more than error or misunder-standing with respect to the law."  *ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1463 (10th Cir. 1995); *see also Stolt-Nielson*, 130 S.Ct. at 1767 ("It is not enough . . . to show that the panel committed an error – or even a serious error.").  Instead, manifest disregard requires a party to establish that the arbitrators acted with "willful inattentiveness to the governing law"; that is, "the record must show the arbitrators knew the law and explicitly disregarded it."  *Hollern*, 458 F.3d at 1176 (internal quotation marks omitted).  Notably, the manifest disregard standard applies only to conclusions of law, not to the arbitrators' factual findings, which are beyond review.  *See Kennecott Utah Copper Corp. v. Becker*, 195 F.3d 1201, 1204 (10th Cir. 1999).

---

[3] The Fifth, Eighth, and Eleventh Circuits have held that the manifest disregard standard did not survive *Hall Street*.  *See Citigroup Global Mkts., Inc. v. Bacon*, 562 F.3d 349, 355 (5th Cir. 2009); *Medicine Shoppe Int'l, Inc. v. Turner Invs., Inc.*, 614 F.3d 485, 489 (8th Cir. 2010); *Frazier v. CitiFinancial Corp., LLC*, 604 F.3d 1313, 1324 (11th Cir. 2010).  The Second and Ninth Circuits have held otherwise.  *See Stolt-Nielsen SA v. Animal Feeds Int'l Corp.*, 548 F.3d 85, 95 (2d Cir. 2008), *overruled on other grounds by* 130 S.Ct. 1758 (2010); *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1290 (9th Cir. 2009).

## III.  <u>ANALYSIS</u>

CGMI contends that the Award must be vacated because the Panel manifestly disregarded controlling legal precedent in awarding damages to Petitioners. Additionally, CGMI contends that the Panel exceeded its powers by not following FINRA procedures in awarding punitive damages or attorneys' fees to Petitioners. The Court will address each argument in turn.

### A.   THE PANEL DID NOT MANIFESTLY DISREGARD THE LAW

CGMI's manifest disregard argument is predicated on the fact that Petitioners signed subscription agreements, which contained risk disclosure language.  (*See, e.g.*, Doc. # 75-48, ¶ 3; Doc. # 76-7, ¶ 2.) ("Subscriber understands that an investment . . . involves certain risks, including the risk of loss of all or a substantial part of Subscriber's investment.")  CGMI argues that because Petitioners signed these subscription agreements, they were charged with constructive knowledge of the risks disclosed therein and could not have justifiability relied on any contrary oral representations made in connection with their purchases.  (Doc. # 16 at 22.)  CGMI asserts that the Panel acted in manifest disregard of the law when it ignored *Zobrist v. Coal-X, Inc.*, 708 F.2d 1511 (10th Cir. 1983).

The Court finds CGMI's argument wholly unpersuasive.  First, as Petitioners point out, *Zobrist* is a Tenth Circuit case interpreting federal law, specifically § 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder.  *See* 708 F.2d at 1515.  In contrast, the claims pleaded and tried before the Panel were Colorado state law claims.  Thus, *Zobrist* is not directly on point and the Panel cannot be said to

have deliberately ignored governing law. *See Smith v. Bayer Corp.*, 131 S.Ct. 2368, 2379 (2011) ("A federal court and a state court apply different law. That means they decide distinct questions."); *People v. Barber*, 799 P.2d 936, 940 (Colo. 1990) ("Lower federal courts do not have appellate jurisdiction over state courts and their decisions are not conclusive on state courts").

In an attempt to show that Colorado law is in accord with *Zobrist*, CGMI also cites to Colorado state court decisions in their reply. (Doc. # 67 at 9.) However, the issue in this case is whether the Panel "knew the law and explicitly disregarded it." *Dominion Video*, 430 F.3d at 1275. Even assuming *arguendo* that Colorado law would necessarily have compelled a different result than that reached by the Panel,[4] CGMI does not claim that it presented these cases to the Panel, and there is no evidence that the Panel was aware of this supposedly controlling law.

Also detrimental to CGMI's argument is that CGMI vastly overstates the holding of *Zobrist*. Thus, even if *Zobrist* was controlling law (which it is not), the Panel did not "explicitly disregard" it by awarding damages to Petitioners. *Zobrist* held that an investor who fails to read a risk disclosure agreement is charged with constructive knowledge of the risks and warnings contained in such an agreement. *See* 708 F.2d at 1518. *Zobrist* does not hold that a written disclosure of risks completely insulates

---

[4] CGMI cites to *M.D.C./Wood, Inc. v. Mortimer*, 866 P.2d 1380 (Colo. 1994) for the proposition that a party with access to relevant information cannot justifiably rely on representations inconsistent with that information. (Doc. # 67 at 9.) In that case, the Colorado Supreme Court noted that a party claiming fraud has no right to rely upon a false representation when that party had "access to information that was equally available to both parties and would have led to the true facts." *Mortimer*, 866 P.2d at 1382. The Court also emphasized that whether the party claiming fraud "has a right to rely on the misrepresentation is **a question of fact**." *Id.* (emphasis added). Thus, under Colorado law, whether a party justifiably relied on a misrepresentation is a factual question outside the scope of this review.

a defendant from liability for fraud, as CGMI seems to suggest.  In fact, *Zobrist* itself expressly disavowed this proposition.  *See id.*, at 1518 ("[W]e do not imply that the defendants can disclaim responsibility for their misrepresentations simply by disclosing the risks in the [risk disclosure agreement] and therein warning investors not to rely on representations not contained within the [agreement].").  Although *Zobrist* found that the investor in that case did not justifiably rely on misrepresentations in light of his constructive knowledge of the risk disclosure agreement, the court limited that finding to the facts of the case.  *See id.* ("We do not say that such reliance might not be justified under different factual circumstances.").  Thus, whether Petitioners justifiably relied on CGMI's misrepresentations is a complex, fact-intensive inquiry that the Panel necessarily resolved in favor of Petitioners.  *See id.* at 1515 (listing eight factors that courts consider in determining whether reliance was justified).  Although the Panel could have found that Petitioners' reliance was not justified, it was not compelled to do so under *Zobrist*.

The fact that the Panel disagreed with CGMI's legal position is not evidence that the Panel ignored controlling law.  Because CGMI has not demonstrated that the Panel acted with "willful inattentiveness" to controlling law, this Court will not vacate the Award.

**B.    THE PANEL DID NOT EXCEED ITS AUTHORITY BY AWARDING PUNITIVE DAMAGES.**

Next, CGMI claims that the Panel exceeded its authority by awarding punitive damages to Petitioners.  CGMI asserts that "the Panel was bound – but failed to – follow substantive Colorado law in deciding whether punitive damages were warranted."

(Doc. # 16 at 29.)  CGMI also contends that the Panel's failure to comply with FINRA procedures warrants vacatur of the punitive damages award.  (*Id.* at 35.)

In Colorado, punitive damages are available by statute when "the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct . . . ."  Colo. Rev. Stat. § 13-21-102(1)(a).  Section 13-21-102(1)(b) defines "willful and wanton conduct" as "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly, and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff."  Where a "defendant is conscious of his conduct and the existing conditions and knew or should have known that injury would result, the statutory requirements of section 13-21-102 are met."  *Qwest Servs. Corp. v. Blood*, 252 P.3d 1071, 1092 (Colo. 2011) (quoting *Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 66 (Colo. 2005).  The party requesting punitive damages must prove that they are entitled to such damages "beyond a reasonable doubt."  *Id.* at 1093.

CGMI argues that Petitioners "did not come close to establishing the type of wrongful intentional conduct required by Colorado law, let alone to making that showing beyond a reasonable doubt."  (Doc. # 16 at 30) (emphasis removed.)  Essentially, CGMI is attempting to re-litigate the merits of the case by arguing that the evidence was insufficient to support a finding of willful and wanton conduct.  CGMI argues that an award of punitive damages should be vacated where "there is insufficient evidence establishing the requisite level of intent."  (Doc. # 16 at 31.)  This court is not permitted to make this type of review.  *See Denver & Rio Grande W. R.R.*, 119 F.3d at 849 (errors

in an arbitrator's factual findings or his interpretation of the law do not justify review or reversal); *Gingiss Int'l, Inc. v. Bormet*, 58 F.3d 328, 333 (7th Cir. 1995) ("insufficiency of evidence is not a ground for setting aside an arbitration award under the FAA"); *Loughridge v. Allen*, 25 F.3d 1057, 1994 WL 258719, at *1 (10th Cir. June 14, 1994) (unpublished) (courts cannot review the evidence put before an arbitration panel and an "arbitrator's award is not open to review on the merits."). Thus, whether or not the evidence was sufficient to show that CGMI acted with "willful and wanton conduct" is a question beyond the scope of this review.[5]

CGMI also contends that the punitive damages award should be vacated because the Panel did not comply with FINRA procedural rules. An arbitrator's failure to abide by procedural rules when arriving at the arbitral award may support a manifest disregard of the law challenge. *See Kashner Davidson Sec. Corp. v. Mscisz*, 531 F.3d 68, 77 (1st Cir. 2008). Here, both parties agreed to be bound by FINRA's "procedures and rules." (Doc. # 2 at 3-10.) Those procedures and rules include the FINRA Dispute Resolution Arbitrator's Reference Guide (the "Arbitrator's Guide"), which authorized the Panel to award punitive damages. (Doc. # 14-26 at 51.) With respect to punitive damages, the Arbitrator's Guide states:

> If punitive damages are awarded, the arbitrators **should** clearly specify what portion of the award is intended as punitive damages. In addition, arbitrators **should** include in the award the basis for awarding punitive damages. If the panel needs additional information to determine the basis for awarding punitive damages, it **should** ask the parties to brief the issue

---

[5] To the extent that CGMI argues the Panel acted in manifest disregard of the law by awarding punitive damages, CGMI must show that the Panel "knew the law and explicitly disregarded it." *Dominion Video*, 430 F.3d at 1275. CGMI has not asserted that the Panel was informed of Colorado substantive law.

to help determine whether both factual and legal bases exist for such an award.

(*Id.*) (emphasis added).  CGMI contends that "the Panel failed to state a basis in either fact or law for punitive damages, and did not request that the parties brief the issue to help them determine if such basis existed."  (Doc. # 16 at 35.)  First, the Panel did state a basis for awarding punitive damages by citing to *Pyle v. Sec., U.S.A., Inc.*, 758 F. Supp. 639 (D. Colo. 1991).[6]  CGMI argues, without citation to legal authority, that the Panel's bare invocation of *Pyle* does not satisfy the Panel's obligation to "state a basis in either fact or law for punitive damages."  (Doc. #16 at 36.)  Even assuming that CGMI is correct, this is not grounds for vacatur because CGMI ignores the discretionary language of this provision.  The Arbitrator's Guide does not obligate arbitrators to include the basis for punitive damages in an award; rather, the Guide merely recommends that arbitrators include such information.[7]  *See Qwest Corp. v. F.C.C.*, 258 F.3d 1191, 1200 (10th Cir. 2001) ("The term 'should' indicates a recommended course of action, but does not imply the obligation associated with 'shall.'").  CGMI directs the Court to no case law, and the Court has found none upon independent investigation, in which an arbitration panel's failure to follow recommended (but not mandatory) procedural rules justifies vacatur of an arbitral award.  Thus, the Court finds that the Panel did not exceed its powers in awarding punitive damages.

---

[6] Additionally, the Court observes that the Panel had no obligation to request that the parties brief the issue of punitive damages as the Arbitrator's Guide recommends additional briefing only if the "panel needs additional information."

[7] In other sections of the Arbitrator's Guide, the Guide uses non-discretionary terms such as "must."  (*See* Doc. # 14-26 at 52) ("The authority for granting attorneys' fees **must** be included in the award.").

**C.    THE PANEL DID NOT EXCEED ITS AUTHORITY BY AWARDING ATTORNEYS' FEES.**

CGMI argues that the Panel exceeded its authority by failing to comply with FINRA procedures when it awarded attorneys' fees to Petitioners.  *See Mscisz*, 531 F.3d at 68 ("If the arbitrator ignores the plainly stated procedural rules incorporated in the agreement to arbitrate while arriving at the arbitral award, that award is subject to a manifest disregard of the law challenge.").  With respect to attorneys' fees, the Arbitrator's Guide provides, in relevant part:

> The authority for granting attorneys' fees must be included in the award. If the arbitrators have doubts regarding their authority to award such fees, they should request the parties to brief the issue . . . If the panel deter-mines that a party has a right to reimbursement for attorneys' fees, that party must prove the amount to the satisfaction of the panel.

(Doc. # 14-26 at 52.)  The Arbitrator's Guide specifies three situations when a party may pursue attorneys' fees, including when "the fees are allowed as part of a statutory claim."  (*Id.*)  Here, the Panel awarded attorneys' fees pursuant to Colo. Rev. Stat. § 11-51-604, which permits recovery of attorneys' fees for certain violations of the Colorado Securities Act ("CSA").[8]

---

[8] The Panel did not state which subsection of § 11-51-604 it relied on in awarding attorneys' fees, although subsection 11-51-604(3) appears to be the most relevant provision.  That section permits an award of attorneys' fees against a party who "recklessly, knowingly, or with an intent to defraud sells or buys a security in violation of section 11-51-501(1)."  Section 11-51-501(1) makes it unlawful for any person, in connection with the offer, sale, or purchase of a security, to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made not misleading.  The Panel's lack of specificity makes review of this portion of the Award more difficult, but is not, by itself, reason to upset the award of attorneys' fees.  *See Barrett v. Inv. Mgmt. Consultants, Ltd.*, 190 P.3d 800, 802-803 (Colo. App. 2008) (finding that arbitrators' mistaken reference to inapplicable provision did not require district court to vacate an award of attorneys' fees in an arbitration proceeding governed by the FAA).

Arbitrators derive their authority to resolve disputes from the parties' arbitration agreement.  *See Hollern*, 458 F.3d at 1174; *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("Arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes . . . that the parties have agreed to submit to arbitration.").  Both parties in this case signed Submission Agreements, pursuant to which they submitted the matter in controversy, "as set forth in the attached statement of claim . . . to arbitration."  (Doc. # 2 at 3-10.)

CGMI does not dispute that § 11-51-604 is a statute that allows for the recovery of attorneys' fees.  Nevertheless, CGMI contends that the Panel exceeded its powers by awarding attorneys' fees pursuant to that statute because Petitioners had not expressly asserted a violation of the CSA in the SOC.  (See Doc. # 14-13.)  CGMI asserts that "[a]n award of attorneys' fees based on a cause of action that was not submitted to arbitration was clearly outside the Arbitrators' authority."  (Doc. # 16 at 38.)  Petitioners, noting that they requested attorneys' fees in the SOC, contend that the parties incorporated the issue of attorneys' fees as one to be decided by the arbitrators.

At the outset, the Court is "mindful of the strong presumption requiring all doubts concerning whether a matter is within the arbitrators' powers to be resolved in favor of arbitrability."  *Hollern*, 458 F.3d at 1173 (citing *Shankle v. B-G Maint. Mgmt. of Colo., Inc.*, 163 F.3d 1230, 1233 (10th Cir. 1999)); *see also El Dorado Technical Servs. v. Union Gen.*, 961 F.2d 317, 321 (1st Cir. 1992) ("An arbitrator's view of the scope of the issue committed to his care is entitled to . . . far-reaching respect and deference").  Thus, the Panel's conclusion that the issue of attorneys' fees was before them is

entitled to great deference as "it is incumbent upon the federal courts to recognize that the Arbitrator is in the best position to make decisions relating to and affecting the parties to the arbitration, and to defer to the arbitrator's judgment on such matters." *United Steelworkers of Am. v. Ideal Cement Co.*, 762 F.2d 837, 841 (10th Cir. 1985); (*see also* Doc. # 78-52) (FINRA Rule 12409 provides FINRA arbitrators with "authority to interpret and determine the applicability of all provisions under the [FINRA] Code [of Arbitration Procedure]. Such interpretations are final and binding upon the parties.").

FINRA Rule 12100(d) defines the term "claim" as an "allegation or request for relief." (Doc. # 78-49.) To initiate arbitration, a claimant must file "[a] statement of claim specifying the relevant facts and remedies requested." (Doc. # 78-50.) Pursuant to these FINRA rules, Petitioners filed a SOC that specified relevant facts and requested attorneys' fees.[9] By signing the Submission Agreements, the parties submitted the issue of attorneys' fees to the Panel. *See Hollern*, 458 F.3d at 1174 ("By incorporating their pleadings, including their parallel requests for attorneys' fees, into the Uniform Submission Agreement, the parties expressly empowered the arbitrators to award attorneys' fees."); *see also First Interregional Equity Corp. v. Haughton*, 842 F. Supp. 105, 112 (S.D.N.Y. 1994) (finding that arbitrators were empowered to award attorneys' fees based on virtually identical submission agreement where the SOC requested attorneys' fees).

Although the code sections of the CSA were not cited by Petitioners in the SOC, it is apparent that CGMI was aware that the case involved CSA claims. For example, in

---

[9] CGMI cites to nothing in the FINRA rules requiring that a statement of claim enumerate the statutory basis for the claim.

his closing argument, CGMI's counsel referenced a Colorado Supreme Court case

discussing the elements of a fraud claim arising under the CSA.  (Doc. # 74-9 at 261)

(citing *Goss v. Clutch Exch., Inc.*, 701 P.2d 33, 36 (Colo. 1985)).  CGMI's counsel

quoted *Goss*' standard for "materiality" to suggest that any misrepresentations or

omissions made by CGMI were not material.  (*Id.*)  In his closing argument, CGMI's

counsel also listed the elements of a fraud claim in Colorado to include (1) a misrepre-

sentation of a material fact; (2) that the plaintiff actually relied on; and (3) that the

reliance resulted in damage.  (Doc. # 74-9 at 257-59.)  These elements essentially

overlap with the elements of a securities fraud claim under Colo. Rev. Stat. § 11-51-

501.[10]  *See Huffman v. Westmoreland Coal Co.*, 205 P.3d 501, 505 (Colo. App. 2009).

Moreover, a claim for common law fraud and one brought under the CSA are

"'sufficiently intertwined' within the same factual transaction, and the 'major thrust of

these claims is identical.'"  *Id.* at 507 (quoting *Sandefer v. Dist. Court*, 635 P.2d 547,

551 (Colo. 1981), *overruled in part on other grounds by Sager v. Dist. Court*, 698 P.2d

250 (Colo. 1985)).  Thus, CGMI's contention that it "had no advance warning of the

[CSA] claim and no opportunity to respond to it" is disingenuous because the elements

of a common law claim and the statutory claim are virtually identical.  *See Huffman*, 205

P.3d at 507 (determining that "issues relating to the common law fraud and negligent

misrepresentation claims . . . are identical to plaintiff's claim under the Colorado

Securities Act").

[10] The claims in this case clearly arise from the sales of securities.  *See* Colo. Rev. Stat. § 11-51-501.

Moreover, parties "may also acquiesce in the awarding of attorneys' fees by their conduct at the arbitration." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Savino*, No. 06 Civ. 868, 2007 WL 895767, at *18 (S.D.N.Y. Mar. 23, 2007) (unpublished) (internal quotations omitted).  Despite knowing that Petitioners sought attorneys' fees, CGMI never raised the issue of the Panel's authority to award such fees during the arbitration hearing.  During closing argument, Petitioners' specifically directed the Panel to the CSA as a basis for awarding attorneys' fees; again, CGMI failed to object to the request for fees.  (Doc. # 74-9 at 428, 437.)  By failing to object to Petitioners' request for fees at any time during the hearing, CGMI effectively waived its right to contest the fees. *See Hollern*, 458 F.3d at 1174 (because "[n]either party objected to the arbitrators' authority to award attorneys' fees," the parties had authorized the arbitrators to decide the issue of attorneys' fees).

Finally, CGMI also contends that the amount of the $3 million award contravened FINRA procedural requirements because Petitioners failed to "prove the amount" of their attorneys' fees during the hearing.  However, the Arbitrator's Guide mandates that a party "must prove the amount of attorneys' fees **to the satisfaction of the panel**." (Doc. # 14-26 at 52) (emphasis added).  Evidently, the Panel was satisfied by Petitioners' presentation.  Accordingly, the Panel did not exceed its authority by awarding attorneys' fees to Petitioners.

## IV.  **CONCLUSION**

For the foregoing reasons, CGMI's Motion to Vacate the Arbitration Award (Doc. # 16) is DENIED, and Petitioners' Petition to Confirm Arbitration Award (Doc. # 1) is GRANTED.

In their response to CGMI's Motion, Petitioners move the Court to order CGMI to pay the costs and attorneys' fees incurred by Petitioners in association with the instant motion.  By Local Rule, "[a] motion shall not be included in a response or reply to the original motion.  A motion shall be made in a separate paper."  D.C.COLO.LCivR 7.1(C).  Thus, Petitioners' request is DENIED WITHOUT PREJUDICE.  Petitioners have 14 days from the date of this Order to file a motion for attorneys' fees that demonstrates they are entitled to such fees and that such fees are reasonable.

DATED:  December __21__, 2011

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge