**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 11-cv-00971-CMA-CBS

GERALD D. HOSIER, Individually and as Trustee of
   The Gerald D. Hosier U/A/D 10/04/99,
BRUSH CREEK CAPITAL LLC, and
JERRY MURDOCK, JR.,

      Petitioners/Arbitration Claimants,

v.

CITIGROUP GLOBAL MARKETS, INC.,

      Respondent/Arbitration Respondent.

---

## ORDER GRANTING MOTION TO AMEND JUDGMENT

---

This matter is before the Court on Petitioners Gerald D. Hosier ("Hosier"), Brush

Creek Capital LLC ("Brush Creek"), and Jerry Murdock, Jr.'s ("Murdock") (collectively,

"Petitioners") Motion to Alter or Amend Judgment.  (Doc. # 104.)  Pursuant to Fed. R.

Civ. P. 59(e), Petitioners request that the Court amend the December 22, 2012

judgment entered by the Clerk of the Court.

## I.  BACKGROUND

In this case, Petitioners alleged that Respondent Citigroup Global Markets, Inc.

("CGMI") had misrepresented the risks associated with certain investment products

that it sold to Petitioners.  Petitioners submitted their claims to a Financial Industry

Regulatory Authority ("FINRA") arbitration panel (the "Panel").  After a nine-day hearing,

the Panel issued an Arbitration Award (the "Award").  The Panel awarded Hosier

compensatory damages in the amount of $21,683,679, Brush Creek compensatory damages in the amount of $8,472,212 and Murdock compensatory damages in the amount of $3,903,057.  The Panel awarded interest on these compensatory damages "at the Colorado statutory rate of 8% per annum, accruing from the 31st day after service of [the] award if it remains unpaid, until final payment of the award."  (Doc. # 2 at 13.)  The Panel also awarded Petitioners punitive damages in the amount of $17,000,000, attorneys' fees in the amount of $3,000,000, expert witness fees in the amount of $33,500, court reporter costs in the amount of $13,168.29, and the non-refundable portion of the initial filing fee previously paid by Petitioners in the amount of $600.  The Panel awarded no interest on these punitive damages, attorneys' fees, or costs.  (*See id.*)  After the Panel issued the Award, Petitioners petitioned the Court to confirm the Award and enter judgment, and CGMI moved the Court to vacate the Award.

On December 21, 2011, the Court issued an Order denying CGMI's motion to vacate the Award, and granting Petitioners' petition to confirm the Award.  (*Id.* at 18.)  Final Judgment was entered by the Clerk of the Court on December 22, 2011.  (Doc. # 99.)  On January 17, 2012, CGMI paid Petitioners the compensatory damages portion of the award, interest on those damages accruing at the Colorado statutory rate of 8% per annum from the 31st day after the service of the Award, and the costs awarded by the Panel.  (Doc. # 112 at 6.)  CGMI's payment was in the aggregate amount of $35,972,460.02.  (Doc. # 112-1, ¶ 9.)

2

In the instant motion, filed on January 19, 2012, Petitioners request an amended final judgment that would specify the amount of money damages awarded to Petitioners, and award them post-judgment interest on the entire Award at the Colorado statutory rate of 8% per annum.  CGMI responded on Febuary 13, 2012, and Petitioners replied on March 1, 2012.  (Doc. ## 112, 113.)

## II.  DISCUSSION

**A.   WHETHER THE COURT SHOULD DIRECT ENTRY OF AN AMENDED JUDGMENT SPECIFYING THE MONEY DAMAGES AWARDED**

Petitioners contend that when an arbitration award is confirmed and judgment is entered thereon, the judgment must specify the amount of damages awarded. In response, CGMI asserts that although the Court may enter a detailed judgment of the kind requested by Petitioners, the Court is not required to do so.  Regardless of whether the Court is required to enter a more detailed judgment,[1] the Court finds that the better practice is to amend the judgment to include the exact amounts owed by CGMI to Petitioners.  Amending the judgment will allow any interested party to ascertain the amount of damages by reviewing the judgment alone and will prevent any unnecessary confusion as to "who has won and what relief has been awarded."  *Otis v. City of*

---

[1]  It appears that the issue of what constitutes a proper judgment is a matter of some dispute in the circuit courts.  *Compare Citizens Elec. Corp. v. Bituminous Fire & Marine Ins. Co.*, 68 F.3d 1016, 1021 (7th Cir. 1995) (a proper judgment "says who is liable for how much then stops") *with Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc.*, 665 F.3d 1091, 1101-02 (9th Cir. 2011) (finding that a judgment confirming an arbitration award, but not specifying the dollar amount of the award, constitutes a proper judgment).

3

*Cihcago*, 29 F.3d 1159, 1163 (7th Cir. 1994).  Further, no prejudice to either party will result from amending the judgment to include such specification.

**B.     WHETHER PETITIONERS ARE ENTITLED TO POST-JUDGEMENT INTEREST ON THE ENTIRE AWARD AND AT WHAT RATE**

Petitioners contend that they are entitled to post-judgment interest on the entire Award at the Colorado statutory rate of 8% per annum.[2]   CGMI argues thatPetitioners are only entitled to pos-tjudgment interest on the compensatory damages portion of the Award.  Alternatively, CGMI contends that even if Petitioners are entitled to post-judgment interest on all components of the Award (including compensatory damages), interest should accrue at the federal statutory rate calculated under 28 U.S.C. § 1961. For the following reasons, the Court agrees with Petitioners that post-judgment interest should accrue on the entire Award; however, the Court agrees with CGMI that post-judgment interest accrues at the federal statutory rate.

Federal law governs the award of post-judgment interest in federal cases, including when the federal court confirms an arbitration agreement.[3]   *See Fid. Fed. Bank, FSB v. Durga Ma Corp.*, 387 F.3d 1021, 1024 (9th Cir. 2004) ("A judgment confirming an arbitration award is treated similarly to any other federal judgment."). Thus, "once an arbitration award is confirmed in federal court, the rate specified in

---

[2]  In their Reply, Petitioners concede that they are not entitled to post-award/pre-judgment interest on the award of punitive damages and attorneys' fees as they originally requested. (Doc. # 113 at 3.)

[3]  Pre-judgment interest is governed by state law.  Nothing in this Order should be construed as affecting the Panel's award of pre-judgment interest on the compensatory damages.

§ 1961 applies."[4]  *Id.*  Under § 1961, post-judgment interest is mandatory and cannot be withheld by a district court or set by the court at a rate different from the rate specified by the statute.  *See Newmont U.S.A. Ltd. v. Ins. Co. of N. Am.*, 615 F.3d 1268, 1277 (10th Cir. 2010).

The exception to § 1961 is that parties may agree to apply a different post-judgment interest rate "so long as the parties indicate their intent to override the statute using 'clear, unambiguous and unequivocal language.'"  *Id.* (quoting *Society of Lloyd's v. Reinhart*, 402 F.3d 982, 1004 (10th Cir. 2005)).  Although an arbitration panel may determine whether the parties have sufficiently contracted to apply their own rate, "an arbitration panel may not establish a post-judgment interest rate itself."  *Id.*; *see also Fid. Fed. Bank*, 387 F.3d at 1024 (holding that once an arbitration award is confirmed by a federal court, the rate specified in § 1961 applies irrespective of whether the arbitrator award purported to grant post-judgment interest at a different rate).  The Court finds that the parties did not clearly, unambiguously, and unequivocally contract to override § 1961; thus, the federal statutory rate for post-judgment interest applies to the entire Award.

All parties to this case signed Submission Agreements, by which they submitted the matter in controversy to arbitration before the Panel.  (Doc. # 2 at 3-10.)  By signing

_____

[4]  Section 1961 provides that "interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding. [*sic*] the date of the judgment."  The rate applicable to the December 22, 2011 Judgment is 0.11% per annum.  *See* http://www.federalreserve.gov/h15/20111219/ (last visted Mar. 7, 2012).

the Submission Agreements, the parties also contracted to be bound by FINRA's "procedures and rules." (*Id.*) FINRA Code of Arbitration Procedure 12904(j) provides, in relevant part, that "[a]n award shall bear interest from the date of the award . . . as specified by the panel in the award." The Code also provides that "interest shall be assessed at the legal rate, if any, then prevailing in the state where the award was rendered, or at a rate set by the arbitrator(s)."

The language of FINRA Code provision 12904(j) does not clearly, unambiguously, and unequivocally show that the parties contracted to apply a post-judgment interest rate other than the federal statutory rate.[5] Notably, the Code discusses "interest" generally, but never specifies that this provision governs **post-judgment** interest. Other courts have found that general references to "interest" are not sufficient to supplant § 1961. *See Fin. Fed. Bank*, 387 F.3d at 1023-24 (agreement that did not expressly refer to post-judgment interest rate "evinces no agreement between the parties . . . to waive § 1961."); *Tricon Energy, Ltd., v. Vinmar Int'l, Ltd.*, No. 10-05260, 2012 WL 176438, at *2 (S.D. Tex. Jan. 20, 2012) (unpublished) ("Courts have held that contractual provisions specifying general interest rates . . . are insufficient to displace the statutory postjudgment interest rate.").

---

[5] Petitioners cite two cases in which federal courts awarded post-judgment interest on arbitration awards at the prevailing state rate where the arbitration award was silent on the issue of post-judgment interest. *See Kruse v. Sands Bros. & Co., Ltd.*, 226 F. Supp. 2d 484, 488-89 (S.D.N.Y. 2002); *McClelland v. Azrilyan*, 31 F. Supp. 2d 707, 713 (W.D. Mo. 1998). The Court finds these decisions unpersuasive because neither court offered any analysis to support their determination that the state post-judgment interest rate applied.

Petitioners contend that the issue of interest was submitted to the Panel and the Panel intended to award post-judgment interest on the entire Award at the Colorado statutory rate of 8% per annum.  This is not persuasive for two reasons.  First, it is not clear that the Panel intended to award **post-judgment** interest at the rate of 8%. Instead, the Panel awarded Petitioners **post-award** interest at 8% "accruing from the 31st day after service of this award . . .  until final payment of the award."  Although this language might appear broad enough to include post-judgment interest, other courts tasked with interpreting similarly worded arbitration awards have found that such language is not sufficient to displace the federal statutory rate.  *See Tricon*, 2012 WL 176438, at *3 (applying § 1961's post-judgment interest rate where arbitrators awarded higher interest rate accruing "from the date of the Award until paid"); *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 102 (2d Cir. 2004) (applying § 1961's post-judgment interest rate where contract provided that 15.5% interest would be added to any arbitration award "from the date payment was due to the date payment is made"); *Vision Bank v. 145, LLC*, No. 10-00521, 2011 WL 5289070, at *13 (S.D. Ala. Nov. 4, 2011) (unpublished) (promissory note providing that "interest will accrue at a rate of 18.00% per year on the balance of [the] note not paid at maturity" did not supplant the federal post-judgment interest rate because it did not specify that the rate applied to post-judgment interest).

Second, even if the Panel did intend to award post-judgment interest at 8% on the compensatory damages award, the Tenth Circuit has explicitly stated that

"an arbitration panel may not establish a post-judgment interest rate itself," and may only "determine whether the parties have sufficiently contracted for their own rate." *Newmont*, 615 F.3d at 1277.  As previously discussed, FINRA Code provision 12904(j) does not clearly, unambiguously, and unequivocally show that the parties contracted to apply Colorado's statutory post-judgment interest rate of 8% per annum, rather than the default federal rate.  As the parties did not set their own post-judgment interests rates through contract, the default federal rate must apply.

Accordingly, the Court finds that the federal post-judgment interest rate, as applicable to the December 22 Judgment, applies to the entire Award, "including any prejudgment interest and costs."  *See F.D.I.C. v. United Pac. Ins. Co.*, 152 F.3d 1266, 1277 n.8 (10th Cir. 1998).

## III. <u>CONCLUSION</u>

For the reasons stated above, it is ORDERED that Petitioners' Motion to Alter or Amend Judgment (Doc. # 104) is GRANTED.

1.      It is FURTHER ORDERED that the Clerk of the Court shall enter judgment as follows:

a.      In favor of Petitioner, Gerald D. Hosier, individually and as trustee of the Gerald D. Hosier U/A/D 10/04/99 and against Respondent, Citigroup Global Markets, Inc., for compensatory damages in the amount of $21,683,679.00; and

b.      In favor of Petitioner Brush Creek Capital LLC and against Respondent

Citigroup Global Markets, Inc., for compensatory damages in the amount

of $8,472,212.00; and

c.      In favor of Petitioner Jerry Murdock, Jr. and against Respondent Citigroup

Global Markets, Inc., for compensatory damages in the amount of

$3,903,057.00; and

d.      In favor of Petitioners, Gerald D. Hosier, individually and as trustee of the

Gerald D. Hosier U/A/D 10/04/99, Brush Creek Capital LLC, and Jerry

Murdock, Jr., and against Respondent Citigroup Global Markets, Inc.,

for punitive damages in the amount of $17,000,000; and

e.      In favor of Petitioners, Gerald D. Hosier, individually and as trustee of the

Gerald D. Hosier U/A/D 10/04/99, Brush Creek Capital LLC, and Jerry

Murdock, Jr., and against Respondent Citigroup Global Markets, Inc.,

for attorneys' fees in the amount of $3,000,000; and

f.      In favor of Petitioners, Gerald D. Hosier, individually and as trustee of the

Gerald D. Hosier U/A/D 10/04/99, Brush Creek Capital LLC, and Jerry

Murdock, Jr., and against Respondent Citigroup Global Markets, Inc., for

$33,500.00 in expert witness fees; and

g.      In favor of Petitioners, Gerald D. Hosier, individually and as trustee of the

Gerald D. Hosier U/A/D 10/04/99, Brush Creek Capital LLC, and Jerry

Murdock, Jr., and against Respondent Citigroup Global Markets, Inc., for $13,168.29 in court reporter costs; and

h.   In favor of Petitioners, Gerald D. Hosier, individually and as trustee of the Gerald D. Hosier U/A/D 10/04/99, Brush Creek Capital LLC, and Jerry Murdock, Jr., and against Respondent Citigroup Global Markets, Inc., for $600.00 as reimbursement for the non-refundable portion of the initial claim filing fee previously paid by Petitioners to FINRA Dispute Resolution.

2.   It is FURTHER ORDERED that, in accordance with the Award, pre-judgment interest is awarded on the amounts awarded in Sections 1-A through 1-C above, and only on those amounts, at the rate of 8% per annum, accruing from the 31st day after the service of the Award through the date of entry of the original Final Judgment in this Court (December 22, 2011), in the amounts that follow:

a.   In favor of Petitioner, Gerald D. Hosier, individually and as trustee of the Gerald D. Hosier U/A/D 10/04/99 and against Respondent Citigroup Global Markets, Inc., in the amount of $1,064,579.53; and

b.   In favor of Petitioner Brush Creek Capital LLC and against Respondent Citigroup Global Markets, Inc., in the amount of $415,950.79; and

c.   In favor of Petitioner Jerry Murdock, Jr. and against Respondent Citigroup Global Markets, Inc., in the amount of $191,624.06.

3.     It is FURTHER ORDERED that postjudgment interest, calculated pursuant to 28 U.S.C. § 1961, is awarded on the unpaid portions of the Award, accruing from the date of entry of the original Final Judgment in this Court (December 22, 2011) until the judgment is paid in full.[6]

DATED:  March   13   , 2012

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge

---

[6] Petitioners argue that CGMI's partial payment on the December 22, 2011 Judgment does not suspend the accrual of post-judgment interest on the judgment debt.  The Court agrees in part. "To suspend the accrual of interest on a judgment debt, a tender must be in the full amount owed by the judgment debtor, as determined by the trial court or on appeal, regardless of when the tender is made."  *McCoy v. Whirpool Corp.*, No. 02-2064, 2008 WL 5110534, at *3 (D. Kan. Dec, 2, 2008) (unpublished).  Indisputably, CGMI has not tendered the full amount of the judgment debt to Petitioners.  Thus, post-judgment interest should continue to run on the unpaid portion of the judgment debt.  However, CGMI has already paid $35,972,460.02 in damages, which Plaintiffs have accepted. Thus, post-judgment interest does not continue to accrue on the paid portion of the Award.  *See BP Exploration & Oil Co. v. Maint. Servs., Inc.*, 313 F.3d 936, 948 (6th Cir. 2002) ("the primary purpose of post-judgment interest is to compensate plaintiffs for the lost use of payments due and to discourage unnecessary delay in making payment . . . once a defendant unconditionally tenders payment, the rationale for imposing post-judgment interest no longer applies."); *O'mara v. Geico Gen. Ins. Co.*, No. 09-CV-229, 2010 WL 5067616, at *1 (N.D. Okla. Dec. 7, 2010) (unpublished) (a party may stop the accrual of interest by depositing funds into the court registry)